IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CYNTHIA M. ALSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-553 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cynthia M. Alston ("Alston") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Alston alleges that the ALJ erred by failing to give proper weight to the opinion of her treating physician, failing to give proper weight to a functional capacity evaluation ("FCE"), failing to pose a proper hypothetical question to the vocational expert, and improperly assessing Alston's credibility.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that substantial evidence supports the ALJ's decision. As such, I **RECOMMEND DENYING** Alston's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15).

**STANDARD OF REVIEW**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Alston failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Alston bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals

the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991).

## STATEMENT OF FACTS

### Social and Vocational History

Alston was born on May 10, 1962 (Administrative Record, hereinafter "R." at 44), and is considered a "younger person" under the Act. 20 C.F.R. § 404.1563(c). Alston is insured through December 31, 2014 (R. 26); therefore, she must show that her disability began before the end of her insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Alston has a 10th grade education, and previously worked as a welder/fitter, automobile assembler, and rug cutter.

R. 32, 44, 64, 175–76, 179, 181). Alston reported that during the relevant period, she had the capacity to care for her personal hygiene, care for a dog, wash dishes, make the bed, iron, attend church, and grocery shop using a cart. R. 214–221.

## Claim History

Alston filed for DIB on July 9, 2009, claiming that her disability began on June 15, 2009, due to back and hip pain, shoulder stiffness, and recent ankle pain. R. 86, 87, 170, 174–75. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 86, 100. On September 7, 2011, ALJ Joseph Scruton held a hearing to consider Alston's disability claim. R. 39-74. Alston was represented by an attorney at the hearing, which included testimony from vocational expert, Ashley Wells. R. 63–74.

On October 28, 2011 the ALJ entered his decision denying Alston's claims. R. 24–34. The ALJ found that Alston suffered from the severe impairments of chronic obstructive pulmonary disease (COPD), degenerative joint disease/degenerative disc disease of the lumbar spine, back pain, mild shoulder degenerative joint disease, asymptomatic hepatitis C, obesity, and hypertension. R. 26. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 27–30. The ALJ further found that Alston retained the RFC to perform sedentary work, but requires the option to make in-place positional shifts every 15 to 30 minutes, cannot perform constant reaching or fingering, and can only have moderate exposure to respiratory irritants. R. 30. The ALJ determined that Alston could not return to her past relevant work as welder/fitter, automobile assembler and rug cutter (R. 32), but that Alston could work at jobs that exist in significant numbers in the national economy; namely, charge account clerk, addressing clerk, and surveillance monitor R. 33. Thus, the ALJ concluded that she was not disabled. R. 33.

Alston appealed the ALJ's decision, and submitted additional medical records dated January 21, 2010 through August 3, 2012, which the Appeals Council made part of the record. R. 4–5. On October 10, 2012, the Appeals Council denied Alston's request for review (R. 1–3) and this appeal followed.

## **ANALYSIS**

Alston alleges that the Commissioner erred in (1) failing to assign proper weight to the opinion of her treating physician, Sarah Stubbs, M.D.; (2) failing to fully adopt the findings of a functional capacity evaluation report ("FCE"); (3) failing to include the FCE report's findings in the hypothetical questions posed to the vocational expert; and (4) finding her subjective pain complaints to be only partially credible. Having reviewed the record as a whole, and for the reasons stated below, I find that these claims are without merit.

The parties agree that Alston suffers from severe impairments related to degenerative disc disease, COPD, hepatitis C, obesity and hypertension. The parties also agree that these impairments severely limit Alston's functional capabilities. The ALJ considered all of the relevant evidence in the record, and determined that Alston is capable of performing a range of sedentary work. In making this determination, the ALJ gave great weight to the assessments of the state agency physicians for the period up to the time of their determinations (2009 and 2010). The ALJ found that Alston's functional limitations had worsened in 2011, and thus gave weight to a FCE report performed in July 2011 by physical therapist Bill Mercer. The ALJ also considered the physical assessment by Alston's treating physician, Dr. Stubbs, and noted that it is mostly consistent with the ability to perform sedentary work, and that its more restrictive limitations are not fully supported by the record. R. 26–34.

Alston's assignments of error revolve around the ALJ's failure to adopt a few specific findings by Dr. Stubbs and Mr. Mercer. Specifically, the ALJ did not accept the finding of Dr. Stubbs that Alston would be off task twenty percent of the day and would miss four days of work a month. The ALJ also did not adopt the finding of Dr. Stubbs and Mr. Mercer that Alston can only perform occasional overhead reaching; finding instead that she was capable of frequent overhead reaching. Aside from these discrete issues, the ALJ's opinion that Alston can perform a reduced range of sedentary work is consistent with the medical opinion evidence of record, including the opinions of Dr. Stubbs and Mr. Mercer. The ALJ's decision to give less weight to the more restrictive findings of Dr. Stubbs and Mr. Mercer is supported by substantial evidence.

### Dr. Stubbs's Opinion

Alston suffered two work-related injuries—she fell in 2006, injuring her back and hip; and she was hit in the head with an air gun in 2008. R. 283. The record reflects that Alston also suffered from degenerative disc disease in her lumbar spine, and generally complained of chronic back pain that occasionally radiated into her extremities, as well as head pain and hip pain. She stopped working in 2009 because the plant at which she worked "was not open." R. 283.

On October 23, 2009, William Humphries, M.D., performed a consultative examination of Alston and found her capable of sitting, standing and walking six hours in an eight-hour workday, lifting ten pounds frequently and twenty five pounds occasionally, which corresponds with light work. R. 257–60. On October 27, 2009, state agency physician Michael Hartman, M.D., reviewed Alston's records and found her capable of performing light work. R. 80–85.

In March 2010, James Vascik, M.D. performed an independent medical examination of Alston with regard to her prior work-related injuries. Dr. Vascik examined Alston and noted no upper or lower extremity weakness, and a full range of motion in her neck, shoulder, elbow and

wrist. Alston's neurologic exam was normal in all respects. R. 282–85. Alston reported that her only medication was Tylenol, but stated that she suffered pain all day at a rate of eight out of ten. R. 283. Dr. Vascik noted no weakness, and no sensory loss, she was able to heel and toe walk, and stand on one foot. R. 284. Dr. Vascik found that Alston's present complaints of pain were not related to her prior injuries. R. 284.

On March 17, 2010, Edward Tackey, M.D., performed a consultative exam of Alston, and noted an "unremarkable" physical exam. R. 287–89. Alston complained of aches and pains all over, with numbness behind her head and right lower extremity. R. 287. On physical exam, Alston had a full range of motion in all joints, full muscle strength in her extremities, and no evidence or arthritis or autoimmune disease. Dr. Tackey diagnosed chronic myofascial pain syndrome. R. 288. On May 21, 2010, state agency physician Richard Surrusco, M.D., reviewed Alston's records and assessed her as capable of performing a limited range of light work. R.94–96.

On August 12, 2010, Roger Hofford, M.D. evaluated Alston for an upcoming fibroid tumor surgery. R. 400. He found that Alston had a full range of motion with no musculoskeletal tenderness or swelling and clear lungs. Her motor exam was normal, and she had full strength in all extremities. Alston was oriented in all spheres, and had no signs of mood, thought or memory difficulty. R. 400–406. On December 23, 2010, Dr. Hofford submitted a letter "To Whom it May Concern," stating that Alston "was seen in my clinic on 12/23/10" and that, due to degenerative arthritis of cervical and lumbar disease, Alston could perform no lifting, could only sit or stand for twenty minutes, and could not return to work or school. R. 319, 431. The ALJ gave no weight to this assessment, finding it inconsistent with the other evidence in the record. R. 29.

7

Dr. Stubbs first examined Alston on November 2, 2010, and reported that Alston was in no distress, and was moderately obese, cooperative and alert. R. 420. Dr. Stubbs noted Alston's complaints of back pain radiating bilaterally into her legs, cramping of toes, and weakness in her legs. R. 419. During her physical exam of Alston, Dr. Stubbs noted a normal gait and no visible deformity. Alston had full strength in her extremities, normal reflexes, and pain at straight leg raise of sixty degrees. R. 420. Dr. Stubbs recommended that Alston lift less than twenty five pounds, increase her walking, and attend physical therapy for trunk strengthening. R. 421. Dr. Stubbs prescribed Mobic, Elavil, Tylenol and Ultram for pain. R. 417–22.

On March 11, 2011, Dr. Stubbs again examined Alston, and found that she was in no acute distress, had a full range of motion of all extremities with no edema, clubbing or cyanosis, no spine point tenderness, and a normal mood and affect. Although Alston's back pain involved some degenerative joint disease, Dr. Stubbs believed it was more myalgias and spasms than bone pain. Dr. Stubbs stated that Alston's pain was "manageable" and continued her prescriptions for pain medication. R. 453.

On April 19, 2011, Dr. Stubbs completed a medical source statement in which she found that Alston could sit for six hours, and stand and walk for less than two hours in an eight hour workday; would require a job that permits shifting positions at will; could lift ten pounds occasionally; was capable of low stress work; and would likely be absent from work about four days per month. R. 482–84.

On July 13, 2011, physical therapist Bill Mercer performed a functional capacities evaluation (FCE) on Alston. When asked about returning to full-time employment, Alston stated that she could no longer do the lifting required for her "type of work." R. 694. During the evaluation, Alston was able to lift in the ten to thirty pound range. R. 694. She could sit

8

frequently, stand and walk occasionally, frequently forward reach, occasionally overhead reach, perform critical balancing, operate light arm and leg controls bilaterally, and perform fine hand manipulation bilaterally. R. 696. Mr. Mercer reported that the FCE results indicate that Alston "is not able to work today due to poor trunk stability and limited positional tolerances." R. 694.

On December 1, 2011, Alston returned to Dr. Stubbs, concerned that her treatment notes present conflicting opinions of her functional capacity. R. 751–52. Dr. Stubbs noted that there are inconsistencies between visits, but that each provider made their own clinical judgment. Dr. Stubbs further explained that, "we document what [a patient] tells us at each visit and what our exam findings are, and go by that information to make our best clinical judgment AT THAT TIME of seeing the patient." R. 752. Dr. Stubbs noted that medical records indicate that Alston has chronic pain; that a family practitioner is not the best judge of her functional capacity; and that family practitioners rely on outside specialists to help make an overall impression of a patient's current level of function. R. 752.

On July 20, 2012, Dr. Stubbs completed a second questionnaire form regarding Alston's functional capacity. Dr. Alston declined to complete a majority of the form, stating that she "[did] not feel comfortable filling out. [Patient] has had functional capacity exam." R. 856. Dr. Stubbs did complete the portion with regard to manipulative limitations, and indicated that Alston was capable of frequent reaching, noting "reaching above head for prolonged periods of time exacerbates back pain." R. 857. Dr. Stubbs also noted that Alston's hearing was decreased. All other manipulative and environmental restrictions were marked as unlimited. R. 859.

Based on the above evidence, the ALJ gave significant weight to Dr. Stubbs's objective examination findings, and some weight to her April 19, 2011 medical source statement. R. 30.

9

The ALJ did not find support in the record for Dr. Stubbs's opinion with regard to Alston being off-task during the day or missing work.

Alston asserts that the ALJ erred by not giving controlling weight to all of Dr. Stubbs's findings. A treating physician's opinion is not automatically entitled to controlling weight. Treating physicians' opinions are given controlling weight only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Here, much of Dr. Stubbs's report was adopted by the ALJ in determining Alston's RFC. The ALJ limited Alston to a range of sedentary work, with the option to make in place positional shifts every fifteen to thirty minutes, less than constant reaching or fingering, and moderate exposure to respiratory irritants. R. 30. The ALJ's decision to give less weight to the more restrictive findings of Dr. Stubbs, specifically her conclusion that Alston would miss work four

days a month, is supported by the Alston's medical records, including Dr. Stubbs's own treatment notes.

Drs. Humphries, Vascik, Surrusco and Hartman all found Alston capable of light work. R. 258–60, 282–85, 287–89. Their conclusions are supported by Alston's objective tests, which show mild degenerative changes in her shoulders, mild facet arthrosis and mild diffuse disc bulging in her lumbar spine, and a unilateral pars defect at L5. R. 253–54, 255, 511, 520. Otherwise, EMG and nerve conduction studies of Alston's right lower extremity, as well as x-rays of her hips and head were all normal. R. 264, 271, 273, 275, 396.

Dr. Stubbs examined Alston twice (November 2, 2010 and March 11, 2011) prior to completing her medical source statement. R. 422, 425–26, 451. Alston's physical exams throughout the relevant period were generally normal, and her pain was treated conservatively with medication. R. 417–22, 425–26, 453. Alston consistently had full range of motion and full strength in her lower extremities, intact neurological exams, and normal gait. R. 258–59, 264, 283–84, 287–89, 388–90. On November 2, 2010, Dr. Stubbs found that Alston should lift less than twenty five pounds (which is consistent with the ALJ's sedentary RFC), and recommended walking and physical therapy. R. 421. Dr. Stubbs later noted that Alston likely suffered from "myalgias," and that her pain was "manageable." R. 453.

Notably, once Alston received a functional capacity evaluation, Dr. Stubbs declined to further surmise with regard to Alston's functional capabilities  When asked to complete a second medical source statement, Dr. Stubbs refrained from completing much of the form, relying instead upon Mr. Mercer's FCE report. R. 856. Dr. Stubbs did, however, state that Alston was capable of frequent overhead reaching, undermining Alston's argument that the same finding by

11

the ALJ was in error. Thus, there is ample support in the record for the ALJ's decision to reject the more extreme functional limitations set forth in Dr. Stubbs's medical source statement.

Alston argues that substantial evidence supports Dr. Stubbs's conclusions. That is not the question before the Court. There may be a myriad of possible decisions in any one case that are supported by substantial evidence. Rather, the only relevant issue in this case is whether the ALJ's decision—to give less than controlling weight to Dr. Stubbs's opinion—is supported by substantial evidence. Having reviewed the record as a whole, I find that it is.

### **FCE Report**

Alston also alleges that the ALJ erred by not fully adopting Mr. Mercer's opinion and the results of his FCE report. In a letter dated July 13, 2011, Mr. Mercer stated, "[t]he actual FCE results indicate that Ms. Alston is not able to work today due to poor trunk stability and limited postural tolerances." R. 694. The FCE report indicated that Alston was able to lift in the ten to thirty pound range. R. 694. She could sit frequently, stand and walk occasionally, frequently forward reach, occasionally overhead reach, perform critical balancing, operate light arm and leg controls bilaterally, and perform fine hand manipulation bilaterally. R. 696.

The ALJ considered Mr. Mercer's letter and the FCE report when developing Alston's RFC. R. 26, 30. The ALJ stated that his RFC is "mostly consistent" with the findings in the FCE report, and that the medical evidence in the record indicates that Alston's functional limitations were at their most severe in July 2011 when the FCE was performed. R. 30. The ALJ further noted that the vocational expert reviewed the FCE report and testified that it allowed for performing a range of sedentary work. R. 30. The ALJ considered Mr. Mercer's opinion that Alston suffered from poor trunk stability and slow pace, and accounted for these limitations by restricting Alston to a very limited range of sedentary work, and requiring that she be able to

shift positions frequently. R. 30. The ALJ also restricted Alston to "not constant" reaching, handling and fingering, which, as noted above, is consistent with the July 20, 2012 opinion of Dr. Stubbs. R. 30, 857. The ALJ was not required to adopt wholesale every finding in the FCE report, but rather, to consider the report and weigh it along with the other evidence in the record. Social Security Regulation 06-03p. Accordingly, Alston's claim that the ALJ failed to properly adopt the findings of the FCE report are without merit.

Alston also argues that the ALJ did not properly include the FCE report's findings in his hypothetical question to the vocational expert at the administrative hearing, and thus, the vocational expert's opinion is not relevant. Specifically, Alston argues that it was error for the ALJ to state in his hypothetical to the vocational expert that Alston could perform frequent, but not constant, reaching, handling and fingering. R. 65. Alston points to the finding in the FCE report that she can only engage in occasional overhead reaching with either arm. R. 696, 707.

At the administrative hearing, the ALJ presented a hypothetical to the vocational expert of an individual who is capable of sedentary lifting, carrying, sitting, standing and walking, requires in place position shifts while seated, and is capable of occasional postural movements. The individual was limited to less than constant reaching, handling and fingering, and needed to avoid moderate to concentrated exposure to irritants. R. 65. Based on that hypothetical, the vocational expert found that there existed jobs in the national and regional economy for such an individual. R. 65. The ALJ then handed the vocational expert a copy of the FCE report and asked her to look at it and form an opinion as to whether there are jobs that exist for an individual who has those limitations or abilities. R. 67. The vocational expert reviewed the document and testified that an individual with the limitations set forth in the report is capable of sedentary work. R. 67.

13

A vocational expert must base his opinion upon a consideration of all the evidence in the record, and submit the opinion in response to proper hypothetical questions which fairly set out all of a claimant's impairments.  See, e.g., Day v. Colvin, 2:12-CV-00014-FDW, 2013 WL 4039422, at *5 (W.D.N.C. Aug. 7, 2013) (citing Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989)).  In this case, the ALJ covered all of Alston's medically established impairments in his hypothetical questions to the vocational expert.  The ALJ's hypothetical question set forth above fairly describes all of the limitations included in Alston's RFC, which I previously found to be supported by substantial evidence.

Additionally, Alston's argument that the vocational expert did not fully consider the findings of the FCE report is unfounded.  The ALJ suspended testimony during the administrative hearing to allow the vocational expert to examine the FCE results.  The vocational expert reviewed the results and gave her opinion that it was consistent with the performance of certain sedentary jobs.[1]  The ALJ was not required, as Alston asserts, to present each finding in the FCE report separately to the vocational expert, to ensure that they were all considered.  The ALJ verified that the vocational expert considered the FCE report, and was thus entitled to rely upon the vocational expert's opinion that it was consistent with performing sedentary jobs.

### **Credibility**

Finally, Alston alleges that the ALJ improperly evaluated her credibility as to her subjective pain complaints.  Alston reported that she can stand for approximately ten minutes before she needs to sit down, and that she needs to lie down during the day to alleviate her back pain. R. 50–51.  She also testified that she can sit for twenty to twenty five minutes, but then must move for ten to fifteen minutes before sitting down again. R. 53–54.

---

[1] Alston argues that it is unclear how thoroughly the vocational expert read the FCE report during the administrative hearing.  The record states, "([p]erusing documents)." R. 67.  Alston's belief that the vocational expert's review was perfunctory is nothing more than speculation.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06CV00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence and should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658-59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

The ALJ found that while Alston's medically determinable impairments could reasonably be expected to cause the alleged symptoms; her statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. Specifically, the ALJ noted that Alston's objective medical evidence and treatment history do not fully support her allegations regarding the severity of her functional limitations. R. 31. Additionally, the ALJ's very restrictive RFC accounts for a majority of Alston's alleged functional limitations. The ALJ limited Alston to sedentary work, and provided in place position changes every fifteen to thirty minutes.

Alston's medical records do not provide an evidentiary basis to corroborate Alston's subjective allegations that her pain prevents her from performing a limited range of sedentary work. The ALJ is charged with weighing all of the evidence and assessing the claimant's credibility, and a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the

15

pain the claimant alleges." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996)).

The ALJ did not assert that Alston was pain-free or did not suffer from significant physical impairments. Rather, the ALJ considered the relevant medical evidence and determined that Alston suffered from several severe impairments. The ALJ further found that, despite those impairments, Alston was capable of performing reduced range of sedentary work. Given the examination findings and conservative course of treatment set forth above, the ALJ's determination that Alston is capable of performing a reduced range of sedentary work is supported by substantial evidence.

## **CONCLUSION**

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Alston is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Alston's claim for benefits and in determining that her physical and mental impairments would not prevent her from performing any work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed and the defendant's motion for summary judgment **GRANTED**; and Alston's motion for summary judgment **DENIED**.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 5, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge